# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:17-CR-103-VEH-TMP-1** |
| ) | |
| **SEALED SEARCH WARRANT,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Pending before this court is the Government's Motion To Review Order Requiring Government To Use Filter Team for Search Warrant (hereinafter "Motion To Review"). The Government seeks to have the magistrate judge's Order requiring it to use a filter team[1] when executing a search warrant (hereinafter "Filter Team Order") vacated. For the reasons set out below, the Motion will be granted and the Filter Team Order will be vacated.

The Supreme Court has found that a district court may "review [in] whole," "[review] in part anew," or "wholly ignore" a magistrate judge's order. *Mathews v. Weber*, 423 U.S. 261, 263 (1976). "The authority to make an informed, final determination, [the Supreme Court] emphasize[s], remains with the [district] judge" *Id*. at 271. The district court retains total control and jurisdiction over "the entire

---

[1] Defined and discussed *infra* beginning at page 4.

process." *United States v. Raddatz* 447 U.S. 667, 681 (1980); *see also Webb v. Califano*, 468 F.Supp. 825, 830 (E.D. Cal. 1979) ("[T]he district court *must* give a de novo review when timely objections are filed, and the court *may* give whatever review it deems appropriate, in its discretion, when no objections are filed." (emphasis added)).

This court has exercised its discretion to conduct a *de novo* review of the magistrate judge's order and the underlying search warrant.

## I. Background[2]

On February 6, 2017, the Government applied for a warrant to search an email account that has been used to defraud people in multiple states over several years. The owner of the account is currently unknown and one of the goals of the warrant is to identify any persons using the account to commit the crimes being investigated. The warrant sought would allow the Government to search all messages in the account within the stipulated date range. The date range sought started six months before the first known theft and ran to the date of the warrant application. The application provided for a "two-step process"[3] in executing the search. Beyond describing that process, the Government did not specify what

---

[2] Citations to the record have been omitted because the record is sealed.

[3] Defined and discussed *infra* beginning at page 5.

strategy it intended to use to search the information surrendered by the email service provider.

At 2:10 PM on February 6, 2017, the magistrate judge signed and issued the warrant to search the email account. At 4:57 PM, the magistrate judge issued the Filter Team Order because he felt the breadth of the information sought necessitated greater privacy protection than is usually afforded in a search. The Filter Team Order required the Government to use a filter team to limit the scope of the material reviewed <u>by the investigators</u> to evidence "reasonably identifiable as relevant to the investigation." The Government filed a Motion To Reconsider the Filter Team Order (hereinafter "Motion To Reconsider") on February 21, 2017. The Government sought to have the Filter Team Order vacated. The magistrate judge entered an Order (hereinafter "Reconsideration Order") denying the Motion To Reconsider. The Government then filed the Motion To Review with this court. Neither the magistrate judge nor the Government has indicated that there is reason to believe there is privileged information in the email account.

While the Government has not divulged its exact search strategy, the process that is likely to be used is not as Orwellian as the magistrate judge seems to fear. During a computer search, the Government agents generally do not manually search each and every document that is present on the drive. Undertaking a search of that

3

nature is far too laborious to prove helpful in an investigation because it could take up to twenty-eight man-years to read all of the text that could be stored in the targeted account.[4] Since this is plainly an unworkable time frame for a criminal investigation, the Government will most likely use keyword searches using forensic software to attempt to locate incriminating information in the files. Only after this process occurs will the information be reviewed by a human agent and a determination made about whether it falls within the scope of the warrant. In essence, the Government's software is already acting as a "filter" to protect innocuous information from investigators, and only potentially relevant items will be reviewed by Government agents.

### A. Filter Teams

A "filter team," also called a "taint team," refers to a search procedure in which the team executing a search is divided into two groups: an investigative team and a filter team. The filter team is the group that actually searches the material obtained pursuant to the warrant. During the search, the filter team identifies files responsive to the warrant and passes only those files on to the investigative team.

---

[4] The email account in question can store at least 15 gigabytes of information. This amount can be expanded for a fee. A free account would be able to store 15 billion characters. Assuming an average word length of 4.5 characters, the account can hold 3.3 billion words. Assuming the investigator can read 225 words per minute, the investigator will need 14,814,815 minutes, or 28 years, to read all of the text in the account.

This process creates an "ethical wall"[5] by separating the investigative team from information not relevant to the alleged criminal activity which supported the issuance of the warrant.

Traditionally, filter teams have been used to protect privileged information, such as documents from a doctor's, lawyer's, or congressman's office, from being viewed by investigators.[6] In the present case, the magistrate judge ordered the Government to use a filter team to prevent investigators from viewing <u>any</u> innocuous files intermingled with responsive files. More specifically, the order was <u>not</u> limited to files containing privileged information.

### B. Two-Step Search Process

The Government intends to use a two-step search process in executing the warrant. In the first step, all files the Government has probable cause to believe might contain evidence of the crime are copied and seized by the Government. In the second step, the Government searches all the files it has seized to identify which

---

[5] This was sometimes called a "Chinese wall" in the past, but the term is now disfavored by some courts due to its ethnic derivation.

[6] For example, a Westlaw search using the keywords "filter team" (including quotation marks) returns fifty-two cases which include the phrase. In forty-three of those cases the Government elected to use filter teams because it had reason to believe that the documents being searched included privileged information. The Westlaw search only returned two cases where a magistrate judge required the Government to use filter teams against the Government's wishes. In both of those cases, the district judge found the filter team requirement contrary to law. (discussed *infra* at 14, 15.) (The other seven cases are irrelevant to this discussion).

files are responsive to the warrant. The responsive files are retained by the investigators and the non-responsive files are sealed. This process is permitted by FED. R. CRIM. P. 41(e)(2)(B). By inserting the filter team between steps one and two, the magistrate judge's order has essentially created a three-step process.

## II. Validity of the Search Warrant

Before addressing the validity of the Filter Team Order, this court must determine whether the warrant was valid. If the warrant was not valid, that is, if it failed to satisfy the requirements of the Fourth Amendment, then the Filter Team Order will not save the warrant.

The Supreme Court has interpreted the Fourth Amendment to "*only* require three things" in order for a warrant to be issued. *Dalia v. United States.*, 441 U.S. 238, 255 (1979) (emphasis added). (1) A search warrant must be issued by a neutral, disinterested magistrate; (2) the Government must demonstrate probable cause that the search will yield evidence, fruits of the crime, instrumentalities, or contraband; and (3) the warrant must particularly describe "the things to be seized as well as the place to be searched." *Id.*, 441 U.S. at 255 (internal quotes omitted). Beyond these three requirements, "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general

6

Fourth Amendment protection against unreasonable searches and seizures." *Id*. at 257. Despite this deference shown to the Government, "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Id*. at 258.

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95 (2006). The Fourth Amendment "specifies *only* two matters that must be particularly described in the warrant: the place to be searched and the persons or things to be seized." *Id*. at 97 (emphasis added).

A warrant to search electronic communications may be issued by a "court of competent jurisdiction." 18 U.S.C. § 2703(a). A "court of competent jurisdiction" is defined in this chapter to include, *inter alia,* "any district court of the United States." 18 U.S.C. § 2711(3)(A). This court is a district court of the United States and it is therefore "a neutral, disinterested magistrate" empowered to issue warrants.

This court concurs with the magistrate judge's determination in the warrant that there is "a fair probability" that evidence of the crimes described in the Government's affidavit will be found in the targeted email account.[7] Therefore, the

---

[7] Specific discussion of the facts establishing probable cause has been omitted to protect the investigation.

Government has shown probable cause to search the files in the email account that were created between the dates the Government specified.

The particularity requirement of the Fourth Amendment was intended "to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). To avoid becoming a general search, the search must be limited to "specific areas and things for which there is probable cause to search." *Id.* As discussed above, the warrant has established probable cause to search the account in question and the warrant particularly describes the date range within the account to be searched. So, the Government has satisfied the particularity requirement vis-á-vis the search. However, the particularity requirement also requires the warrant to enable "the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011). The Government met that standard. *See also United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006) (holding that a warrant with a similar formulation to the instant warrant satisfied the particularity requirement). Thus, the warrant satisfies the particularity requirement.

Since the warrant satisfies the three requirements set out by the Supreme Court in *Dalia*, the warrant is valid.

### III. Analysis of the Filter Team Order

### A. The Fourth Amendment Has Provided the Balance That Is To Be Weighed When Determining Whether a Warrant Should Be Issued and There Is "No Occasion" To Alter That Balance.

In the Filter Team Order, the magistrate judge stated that he was concerned that allowing the Government to execute the search without a filter team would violate the privacy rights of the account owner because, the magistrate judge argued, the two-step nature of the search process creates special privacy considerations. However, the Supreme Court has ruled that "probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness" are sufficient preconditions to a warrant to prevent unreasonable violations of privacy. *Zurcher,* 436 U.S. at 565. In *Zurcher*, the Court examined whether the fact that the target of a search warrant was a newspaper created special privacy considerations that required a re-balancing of the public and private interests that are weighed when issuing a warrant. *Id*. at 552. The newspaper argued that it was part of the press, and the First Amendment therefore afforded it greater privacy than the general public enjoyed. *Id.* at 552. The Court rejected the newspaper's argument and ruled that "the Fourth Amendment itself has struck the balance between privacy and public need, and there is no occasion or justification for a court to revise the amendment and strike a new balance." *Id.* at 559. In finding this, the

9

Supreme Court held that there is only one privacy standard: the standard set by the Fourth Amendment. Since there is only one privacy standard, electronically stored information (hereinafter "ESI") is not given more privacy protection than the accused's home, car, or any other property.

The magistrate judge cites two cases to support his view that the balancing test set out in the Fourth Amendment must be altered in light of the unique character of computer searches. Neither of the cases are binding on this court, nor does the court find them persuasive as to the issue presented in the Motion.

The first case, *United States v. Ganias*, is a Second Circuit case from which the magistrate judge quoted as follows: "Because the degree of privacy secured to citizens by the Fourth Amendment has been impacted by the advance of technology, the challenge is to adapt traditional Fourth Amendment concepts to the Government's modern, more sophisticated investigative tools." *United States v. Ganias*, 755 F.3d 125, 134 (2d Cir. 2014). However, the question before the court in *Ganias* was whether "the Fourth Amendment permits officials executing a warrant for the seizure of particular data on a computer to seize and indefinitely retain every file on that computer." *Id.* at 137. The "modern, more sophisticated" approach that concerned the Second Circuit was the Government's ability to retain information indefinitely, not its ability to search the entire computer initially. That

court reasoned that, if the Government was allowed to indefinitely retain every file on the computer, then every document on the computer had been seized. The Government could search both the responsive and non-responsive documents repeatedly for crimes unrelated to the warrant. Therefore, the warrant was no longer particular, but in fact had become a general warrant. *Id.* In contradistinction to the facts of *Ganias*, in the present case, the Government has particularly described the files it intends to seize and there is no indication that the Government intends to keep the searched files indefinitely. Accordingly, *Ganias* does not address the issue before this court.

The second case that the magistrate judge cited was *United States v. Adjani*. In *Adjani*, the Ninth Circuit considered whether a search was too broad because the Government seized a computer that was not owned by the defendant but was located in his house. *United States v. Adjani*, 452 F.3d 1140, 1144 (9th Cir. 2006). This case actually cuts against the magistrate judge's argument, because the Ninth Circuit found that a search of the entire computer was reasonable despite the computer's not being owned by the defendant, while the current case only targets the account believed to have been used to commit the crimes alleged. *Id.* at 1148. The magistrate judge quoted the Ninth Circuit as follows, "The fact of an increasingly technological world is not lost upon us as we consider the proper

balance to strike between protecting an individual's right to privacy and ensuring that the [G]overnment is able to prosecute suspected criminals effectively." *Id.* at 1144. However, this is *dicta*. The *Adjani* court allowed the Government to execute the warrant in the case despite the "increasingly technological world." In essence, while the court explicitly acknowledged that a tremendous amount of information can be gathered by searching new technology, it <u>held</u> that a search of an entire computer is appropriate if probable cause can be shown to justify it. *Id*. at 1152; *see also In the Matter of a Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled by Google, Inc.,* 33 F. Supp. 3d 386, 394 (S.D.N.Y. 2014) ("[T] he case law we have cited concerning searches of hard drives and other storage media supports the Government's ability to access an entire email account in order to conduct a search for emails within the limited categories contained in the warrant.").

      The magistrate judge was correct that his role is "to balance the individual's privacy interest against the [G]overnment's need to detect crime." However, "to strike this balance by requiring a filter team" alters the balance that has been struck by the Fourth Amendment and explicated in *Zurcher*. Therefore, the Filter Team Order will be vacated.

### B. The Government Is Permitted To Review Documents That May Be Non-Responsive to the Warrant To Determine Which Documents Are, in Fact, Responsive.

While the magistrate judge is likely correct that there are innocuous emails amongst any incriminating ones, "some perusal" is generally necessary to determine the "relevance of documents to the crime." *United States v. Slocum*, 708 F.2d 587, 604 (11th Cir. 1983); *see also Andresen v. Maryland* 427 U.S. 463, 482 n.11 (1976) ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized."). In noting that "an officer executing a warrant is entitled to examine any document he discovers" (*Slocum* at 604), the Eleventh Circuit has shown that it has contemplated the fact that officers executing a search of documents will inherently be exposed to documents and information that are not the subject of the warrant, but the Circuit does not consider such cursory review alone to be a violation of the Fourth Amendment. However, the Government's perusal must cease once the inapplicability of the warrant becomes clear. *Id*.

When an officer comes upon a container that might contain incriminating evidence, that container "may be opened immediately." *United States v. Ross*, 456

U.S. 798, 823 (1982).[8] The allowance of searching with immediacy suggests that the investigative team <u>itself</u> is allowed to search despite the possibility that innocuous materials might be present. Indeed, the Court stated that the privacy interest "must give way to *the prompt and efficient* completion of the task at hand." *Id*. at 821 (emphasis added).

Clearly, both the Supreme Court and the Eleventh Circuit have contemplated the realities of warranted searches. They both have carefully considered the Fourth Amendment protection that should be afforded to innocuous documents and found that searches must be allowed unimpeded despite the document owner's privacy interests. Accordingly, the Government will be afforded deference in determining the search protocol for the fruits of this warrant.

### C. The Reasonableness of a Search Is Appropriately Judged After the Fact; Therefore, the Government Will Be Shown Deference in Executing the Search.

In the application for an arrest warrant, the Fourth Amendment interposes the "impartial judgment of a judicial officer" between citizens and the police "to assess the weight and credibility of the information which the complaining officer adduces as probable cause." *Wong Sun v. United States*, 371 U.S. 471, 481-482 (1963). The

---

[8] *Ross* concerns unwarranted searches of vehicles, but the Court stated that unwarranted searches of automobiles supported by probable cause should be given the same force a warranted search. Therefore, the reasoning applies to the current situation as well.

Supreme Court later clarified that this *ex ante* protection also applies to search warrants, adding that the Fourth Amendment provides, "*ex post*, a right to suppress evidence improperly obtained and a cause of action for damages." *Grubbs*, 547 U.S. at 99. That *ex post* protection is the "later judicial review as to [the] reasonableness" of a search that is required by *Dalia*. 441 U.S. at 258; *see supra* Part II at 7; *see also Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (*en banc*) (Noting that Fourth Amendment reasonableness is judged "after [factual] circumstances unfold, not before.").

Despite this guidance from the Supreme Court, magistrate judges have at times attempted to dictate the method that the Government should use to execute a warrant; however, district courts have found these attempts to be inappropriate. *In the Matter of the Search of Information Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.*, 25 F. Supp.3d 1 (D.D.C. 2014) (hereinafter "*Apple I*"). In *Apple I*, a magistrate judge feared that the search of an entire email account would be overly broad, so he refused to issue the warrant unless the Government agreed to use a filter team. *Id*. at 9. However, *Apple I* was reversed when it was reviewed by the district court. The district court reasoned that the Government's application for a warrant met the requirements set out in *Dalia* and, therefore, the court must issue the warrant without requiring a filter team. *In*

15

*the Matter of the Search of Information Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp.3d 157, 165. (D.D.C. 2014) (hereinafter "*Apple II*"). While the *Apple II* court found that the Government should be afforded deference in the execution of the search, it also reminded the Government that the search was subject to later review to determine whether it complied with the Fourth Amendment reasonableness requirement. *Id*. at 166.

    A magistrate judge in the District of Kansas similarly denied a warrant application because the Government refused to use a filter team, despite there being no indication that privileged information was present. *In the Matter of the Search of Premises known as: Three Hotmail Email accounts: [redacted]@ hotmail.com, [redacted]@hotmail.com, [redacted] @hotmail.com Belonging to and Seized from [redacted].*, 2016 WL 1239916, at *24 (D. Kan. Mar. 28, 2016) (hereinafter "*Hotmail*"). The Government appealed the magistrate judge's determination to the district court. The district judge held that the filter team requirement was improper. *Search of Info. Associated with Email Addresses Stored at Premises Controlled by the Microsoft Corp.*, 2016 WL 5410401, at **10 (D. Kan. Sept. 28, 2016) (hereinafter "*Microsoft*"). The district court found that "so long as a warrant specifies with particularity what evidence the [G]overnment intends to seize, establishes probable cause that the evidence is connected to a specific criminal

16

statute, and includes some limitations (such as a date range) to prevent the potential of a general search, the warrant meets the Fourth Amendment particularity requirement." *Id.* The *Microsoft* court, like the *Apple II* court, found that the Government must be afforded discretion in how to execute its search. Therefore, the *Microsoft* court ruled, the court must issue the warrant without the filter team requirement. The court did, however, reiterate that the search itself is subject to later review to ensure it was reasonable.

Here, like in *Apple I* and *Hotmail*, the magistrate judge is concerned that the Government's intended search is so broad that it "eviscerates the particularity requirement." However, like the courts in *Apple II* and *Microsoft*, this court finds that probable cause has been shown to support the breadth of the search and that the particularity requirement has been satisfied. Therefore, the Government will be permitted to execute the search using the method it deems appropriate. Of course the search itself will be subject to later review as to its reasonableness.

## IV. Conclusion and Orders

The Government's Motion To Review is **GRANTED**, and the Filter Team Order is **HEREBY VACATED**.

**DONE** and **ORDERED** this 8th day of August, 2017.

                                                                        **VIRGINIA EMERSON HOPKINS**
                                                                        United States District Judge